United States District Court
Southern District of Texas
**ENTERED**
October 19, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| 3 C'S DIESEL SERVICES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:26-cv-00007 |
| | § | |
| M/V GENESIS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This admiralty case arises from alleged unpaid repair work on two vessels, the *M/V Genesis* and the *M/V Gemini* (the "*Gemini*"). The focus of this Memorandum and Recommendation is the *Gemini*. Plaintiff 3 C's Diesel Services, LLC ("3 C's") sought and obtained the arrest of the *Gemini* to collect for repair work that 3 C's performed on her. Cross-Plaintiff CB50 LLC ("CB50"), which financed Cross-Defendant Genesis Ventures, LLC's ("Genesis Ventures'") purchase of the vessel, then filed a cross-claim to foreclose on its First Preferred Ship Mortgage (the "Preferred Mortgage"). Before the district court is CB50's motion for summary judgment on that cross-claim. (Doc. No. 36.) Because CB50 holds a valid preferred mortgage on which Genesis Ventures has defaulted, the district court should GRANT the motion.

***A. Proceedings.***

This motion concerns two liens on the *Gemini*: CB50's lien arises from the purchase of the *Gemini* and 3 C's' arises from alleged unpaid repair work. (Doc. No. 1; Doc. No. 36-2, pp. 2-3.) 3 C's filed this lawsuit to collect the repair debt and sought the *Gemini's* arrest. (Doc. No.

1.) The Court ordered the *Gemini* arrested on January 6, 2026, and she was seized the next day. (Doc. Nos. 8, 9.) A substitute custodian was later appointed in place of the United States Marshal. (Doc. No. 43, p. 4.) Because CB50 holds a recorded mortgage on the *Gemini*, 3 C's named CB50 as a defendant to provide notice of the *Gemini*'s arrest and of its intent to enforce its lien. (Doc. No. 36, p. 1 n.1) ("While named as a 'Defendant' by [3C's], 3C's has not actually asserted any claims against CB50.").

CB50 answered 3 C's complaint and filed a cross-claim against Genesis Ventures and the *Gemini*, which it later amended. (Doc. Nos. 14, 32.) It asserts an *in rem* claim to enforce the Preferred Mortgage lien and an *in personam* claim against Genesis Ventures for breach of contract. (Doc. No. 32, pp. 6-9.) Genesis Ventures answered the cross-claim on its own behalf and on behalf of the *Gemini*, asserting 17 affirmative defenses. (Doc. No. 33, pp. 5-7.) It also counterclaimed against 3 C's for maritime negligence, breach of the warranty of workmanlike performance, indemnity, and contribution. (Doc. No. 26, pp. 4-5.)

CB50 has moved for summary judgment on its cross-claim. (Doc. No. 36.) Genesis Ventures responded (Doc. No. 41), and CB50 replied (Doc. No. 43).

***B. Summary judgment evidence.***

The following facts are drawn from the summary judgment evidence including: the declaration of Laurence Valls[1] (Doc. No. 36-1); the loan agreement (Doc. No. 36-2); the executed promissory note (Doc. No. 36-3); the First Preferred Mortgage of Vessel (Doc. No. 36-4); documentation of the Preferred Mortgage with the National Vessel Documentation Center ("NVDC") (Doc. No. 36-5); CB50's loan amortization schedule (Doc. No. 36-6); and CB50's

[1] Genesis Ventures objects to this evidence on grounds that Mr. Valls' declaration is not based on personal knowledge. (Doc. No. 41, p. 4.) That objection is addressed below. *See infra* Part E.1.c.

Notice of Default to Genesis Ventures (Doc. No. 36-7). Arguments from the parties' briefing are included where appropriate. (Doc. Nos. 36, 41, 43.)

***1. The parties, loan, promissory note, and Preferred Mortgage.***

CB50 is a Texas limited liability company based in Corpus Christi. (Doc. No. 36-2, p. 2.) Genesis Ventures is a Wyoming limited liability company and does business from Rockport, Texas. *Id.* In September 2024, CB50 agreed to lend Genesis Ventures $325,000 to purchase the thereafter-renamed *Gemini*, a 110-foot passenger vessel. (Doc. No. 36-2, pp. 2-3; Doc. No. 36-5, p. 15.)

On the same day the loan-purchase agreement was executed, Genesis Ventures issued a promissory note to CB50 in the principal amount of $325,000 with a fixed interest rate of ten percent per year. (Doc. No. 36-3.) Unpaid principal and interest were to bear interest at 17.5 percent after maturity. *Id.* Genesis Ventures was required to pay 60 monthly installments of $6,905.29 starting one month after the date of the executed loan-purchase agreement. Installments not received within ten days of their due date were to incur a five percent late charge. *Id.*

The promissory note was secured by the Preferred Mortgage on the *Gemini*. (Doc. No. 36-3, p. 3; Doc. No. 36-4, p. 2.) Under the Preferred Mortgage, Genesis Ventures agreed to do several things. First, Genesis Ventures mortgaged "the whole of the vessel" to CB50. (Doc. No. 36-4, p. 2.) Second, Genesis Ventures agreed to discharge any liens on the vessel promptly. *Id.* at 4. Third, Genesis Ventures agreed to secure the *Gemini*'s release if that vessel were to be attached, seized, or taken into custody. *Id.* The Preferred Mortgage explains that failure to timely pay the installments will constitute an event of default. *Id.* In the event of default, CB50 could accelerate the debt, recover judgment, and sell the vessel as "provided by law." *Id.* at 4-5.

The total amount of the Preferred Mortgage is "the principal amount of $325,000 plus interest accruing thereon; plus all attorney's fees, court costs, and other expenses." *Id.* at 6. The Preferred Mortgage was filed with the NVDC. (Doc. No. 36-5.)

***2. Genesis Ventures' payment history, notice, and default.***

Genesis Ventures quickly fell behind on its payments: its first 11 payments were all late, ranging from 11 to 121 days late. (Doc. No. 36-6, p. 2.) The payments for May, June, July, and August 2025 were all submitted late and on the same day in September 2025. *Id.* According to CB50, Genesis Ventures' October 2025 installment (which also prepaid November 2025) was its most recent payment, and CB50 has not received any payments since then. (Doc. No. 36, p. 3; Doc. No. 36-6, p. 2.)

After months of nonpayment, CB50's counsel sent Genesis Ventures a Notice of Default in March 2026 identifying the unpaid installments from December 2025 and from January, February, and March 2026. (Doc. No. 36-7, p. 2.) The Notice informed Genesis Ventures that CB50 demanded nearly $30,000 in installments, late charges, and attorney fees. *Id.* CB50 further warned that it would accelerate the promissory note unless the sum was paid by the end of March 2026, and that CB50 would also foreclose on the Preferred Mortgage if the debt was accelerated. *Id.* at 3. CB50 asserts that Genesis Ventures did not pay by the deadline, enabling CB50 to accelerate the note. (Doc. No. 36, pp. 4-5.)

***C. The motion for summary judgment, response, and reply.***

***1. Motion.***

CB50 moved for summary judgment on its *in rem* and *in personam* claims. (Doc. No. 36.) CB50 asks for six forms of relief upon the district court's granting of summary judgment in its favor: (1) a declaration that Genesis Ventures defaulted on the terms of the Preferred

Mortgage; (2) a declaration that CB50 holds a valid preferred ship mortgage lien on the *Gemini* superior to all other asserted claims; (3) that judgment be issued *in rem* against the *Gemini*; (4) that judgment be issued *in personam* against Genesis Ventures; (5) that the *Gemini* be sold at a judicial auction with the proceeds paid to CB50 in accordance with the priority ranking of its lien; and (6) that Genesis Ventures "be cast in judgment for any deficiency" remaining after the *Gemini*'s sale and disbursement of proceeds to CB50. *Id.* at 1, 15-16.

CB50 asserts that these forms of relief are appropriate because the Preferred Mortgage satisfies the statutory requirements for a preferred mortgage under the Ship Mortgage Act, 46 U.S.C. § 31322(a) (the "Act"). (Doc. No. 36, p. 7.) CB50 recites the three requirements of the Act: "a preferred ship mortgage, in relevant part, as one that '(1) includes the whole of the vessel; (2) is filed in substantial compliance with [46 U.S.C. § 31321]; [and] (3) covers a documented vessel.'" *Id.* Citing the Preferred Mortgage, CB50 highlights the relevant language: "[o]wner by these presents mortgages and conveys unto Mortgagee, its successors and assigns, the whole of the vessel . . . ." *Id.* (quoting Doc. No. 36-4, p. 2). Thus, CB50 says, the first element is met.

Next, CB50 argues that there was substantial compliance with the Act because it fulfilled two components: "(1) filing and (2) substantial compliance with 46 U.S.C. § 31321." (Doc. No. 36, p. 8.) These components were met, according to CB50, because it filed the Preferred Mortgage with the NVDC, which is tasked with recording such mortgages. *Id.* at 8 (citing 46 U.S.C. §§ 31321(a)(1), 31301(7)). In support of that argument, CB50 attached and referenced documentation from NVDC showing that the proper documentation was filed. *Id.* (citing Doc. No. 36-5, p. 15). Lastly, CB50 asserts that the third requirement of a "documented vessel" was met, because the *Gemini* has an "Official Number" and because the Preferred Mortgage

specifically states that the *Gemini* was to operate under her "marine document" containing that number. *Id.* at 10 (quoting Doc. No. 36-4, p. 3).

Having set forth the requirements for a preferred ship mortgage, CB50 argues that it can now enforce its lien on the *Gemini* because two "events of default" have occurred. (Doc. No. 36, p. 10.) First, Genesis Ventures defaulted by "the simple act" of repeatedly failing to make its payments due under the promissory note. *Id.* at 3. CB50 argues that Genesis Ventures' failure to make the payments enabled CB50 to accelerate the promissory note, causing the unpaid principal amount and interest to be due "immediately." *Id.* at 10. And because Genesis Ventures did not make its due payments by the "cure deadline," CB50 contends, Genesis Ventures is now in default of the Preferred Mortgage and CB50 "is entitled to foreclose on [the Preferred Mortgage] and enforce its maritime lien against the [*Gemini*] *in rem*." *Id.* at 11. Second, the *Gemini*'s arrest violates one of the promissory note's terms that "the issuance of any writ of attachment . . . relating to or affecting any of the property or assets of any person obligated as Maker" entitles CB50 to "accelerate the amounts due under the Loan and Note." *Id.* at 4-5. CB50 thus argues that Genesis Ventures' "breach entitles CB50 to obtain and sell the [*Gemini*] under the [Preferred] Mortgage and as provided by law." *Id.* at 5.

CB50 next addresses lien priority, arguing that the Fifth Circuit's holding in *Corporativo Grupo R SA de C.V. v. Marfield Ltd. Inc.*, 64 F.4th 603, 609 (5th Cir. 2023), established that its lien is in a higher "class" and "rank" than 3 C's' lien. (Doc. No. 36, pp. 11-12.) CB50's lien, an alleged preferred ship mortgage lien, ranks fifth under that case's method of analysis, whereas 3 C's' lien for "unpaid necessaries" ranks sixth. *Id.* So according to CB50, "if and when" a court-ordered judicial auction occurs, "CB50's preferred ship mortgage lien must first be fully satisfied before 3 C's can recover any amounts from the sale proceeds for its subordinate maritime

necessaries lien claim." *Id.* at 12. CB50 acknowledges that if 3 C's can establish that its necessaries lien is valid, then 3 C's will be entitled to repayment for the *custodia legis* expenses incurred during the *Gemini*'s custody. *Id.* Having discussed all the relevant components of the lien, CB50 argues that the appropriate course is to order a judicial sale under 46 U.S.C. § 31326(a). *Id.*

But CB50 is not exclusively pursuing an *in rem* claim against the *Gemini*; it is also seeking summary judgment on its *in personam* breach of contract claim against Genesis Ventures. (Doc. No. 36, p. 14) (citing *Dowell Div. of the Dow Chem. Co. v. Franconia Sea Transp., Ltd*., 504 F. Supp. 579, 581 (S.D.N.Y. 1980), *aff'd*, 659 F.2d 1058 (2d Cir. 1981)). CB50 argues that because it has proved that it possesses a valid maritime lien against the *Gemini*, likewise has it proven its breach of contract claim. *Id.* at 14. The consequence, according to CB50, is that Genesis Ventures is on the hook for "the same [monetary] amount [as] CB50's *in rem* claim." *Id.* CB50 acknowledges that "double recover[y]" is prohibited, so "to the extent that CB50 recovers on its *in rem* claim from the Vessel sale proceeds, it can only recover from Genesis Ventures on its *in personam* award for the deficiency." *Id.* at 14 n.4.

***2. Response.***

Genesis Ventures responded to the summary judgment motion, but does not contest CB50's arguments or argue that it has not defaulted. (Doc. No. 41.) Instead, it contends that CB50's supporting declaration of Laurence Valls (Doc. No. 36-1) is invalid. (Doc. No. 41, p. 4.) Genesis Ventures argues that Valls never "confirms nor provides a justifiable basis . . . to conclude that said verification is based, as required by [Federal Rule of Civil Procedure 56(c)] on his personal knowledge." *Id.* Genesis Ventures argues that his only support is that he has a "purported position at CB50" which qualifies him as a records custodian. *Id.* But if its first

argument is not persuasive, Genesis Ventures urges, a judicial sale should not proceed because of its pending counter-suit against 3 C's for maritime negligence, among other things. *Id.* The judicial sale would thus "disturb the status quo," causing permanent prejudice to Genesis Ventures. *Id.*

***3. Reply.***

CB50 replied, noting at the outset that "Genesis Ventures does not at any point deny that it is in breach of the preferred ship mortgage for the *Gemini*." (Doc. No. 43, p. 1.) Taking up Genesis Ventures' concern with Mr. Valls' declaration, CB50 argues that Genesis Ventures' argument is mistaken because "Mr. Valls' declaration establishes that he is the Director and Managing Member of CB50, and as such, he is a custodian of business records for CB50" under Federal Rule of Evidence 902(11). *Id.* at 2 (citing Fed. R. Evid. 902(11)). CB50 argues that because Genesis Ventures was presented with documentary evidence, Genesis Ventures was obliged to submit "evidence of contradictory facts" to rebut CB50's evidence of default. *Id.* (quoting *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013) (cleaned up)). But Genesis Ventures did not do so, says CB50, "because no such contrary evidence exists" and because Genesis Ventures "did not pay those amounts as they came due." *Id.*

CB50 also attacks Genesis Ventures' status quo argument, contending that the real status quo is Genesis Ventures' "oblig[ation] to pay CB50 on its preferred ship mortgage," and that the maritime lien accompanies the right to have the vessel sold and the debt repaid from the proceeds. (Doc. No. 43, p. 3.) CB50 also argues that even if the district court does not grant summary judgment, the *Gemini* will still be ripe for sale under Supplemental Admiralty Rule E(9)(a)(i). *Id.* at 4. Such is the case, CB50 says, because the cost of keeping custody over the

*Gemini* is disproportionate to its value, and because there has been unreasonable delay by Genesis Ventures in securing the release of the vessel. *Id.* at 4-5.

***D. Legal standards.***

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the initial burden of identifying the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant carries the burden, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake,* 47 F.3d 1459, 1462 (5th Cir. 1995). The district court views the evidence in the light most favorable to the nonmovant, but "[c]onclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *TIG Ins. Co. v. Sedgwick James of Wash*., 276 F.3d 754, 759 (5th Cir. 2002).

A party may object that material cited to support a fact "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). A nonmovant who contends it needs discovery must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Finally, because this admiralty action will be a bench trial, the district court is the ultimate trier of fact. *See* Fed. R. Civ. P. 9(h). "[W]here . . . the evidentiary facts are not disputed, a court in a non-jury case may

grant summary judgment if trial would not enhance its ability to draw inferences and conclusions." *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978).

***E. Analysis.***

CB50 generally argues that it has a first preferred ship mortgage on which Genesis Ventures defaulted. To resolve this argument, the undersigned will: (1) address preliminary objections that this motion is premature and that the summary judgment evidence is unsupported by personal knowledge; (2) assess the validity of the Preferred Mortgage; (3) ascertain whether Genesis Ventures defaulted on the Preferred Mortgage; (4) determine the priority of the liens; (5) consider the amount owed from default; and (6) recommend whether judicial sale of the *Gemini* should be ordered.

***1. Threshold objections.***

***a. This motion for summary judgment is not premature.***

Genesis Ventures first argues that this motion should be denied—or, at least, deferred—until there has been time to test CB50's documentary evidence in the "crucible of discovery." (Doc. No. 41, p. 4.) Genesis Ventures seemingly argues that the motion is premature. But that argument has been squarely rejected by the Fifth Circuit many times: "Rule 56 does not require that any discovery take place before summary judgment can be granted; if a party cannot adequately defend such a motion, Rule [56(d)] is his remedy." *Dominick v. Mayorkas*, 52 F.4th 992, 995 (5th Cir. 2022) (cleaned up).

Genesis Ventures did not move for relief from summary judgment under Federal Rule of Civil Procedure 56(d), nor did it submit an affidavit or declaration identifying the specific facts it expects discovery to reveal or explaining how those facts would create a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(d); *Am. Family Life Assurance Co. v. Biles*, 714 F.3d 887,

894 (5th Cir. 2013). A nonmovant "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts," *Biles*, 714 F.3d at 894 (cleaned up), and Rule 56(d) "may not be invoked by the mere assertion that discovery is incomplete," *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1286 (5th Cir. 1990). If Genesis Ventures needed summary judgment discovery evidence, the proper avenue for obtaining relief was through a motion, not through its response to CB50's motion for summary judgment. Genesis Ventures' attempt to stave off a ruling on the motion for summary judgment by requesting additional discovery is accordingly meritless.

***b. Genesis Ventures' affirmative defenses do not establish a material fact issue.***

Another issue must be addressed before proceeding to the merits: Genesis Ventures' 17 affirmative defenses listed in its answer. (Doc. No. 33, pp. 5-7.) Genesis Ventures' affirmative defenses do not pose a roadblock to assessing the motion for summary judgment, however, because it failed to establish a material fact with regard to any of them in the course of litigating this summary judgment motion. In *Carnegie Technologies, L.L.C. v. Triller, Inc.*, the Fifth Circuit held that the defendant's affirmative defense did not preclude summary judgment because it did not raise any material fact issues that substantiated its defense. 39 F.4th 288, 296 (5th Cir. 2022). The defendant there submitted three declarations in support of its defense, but the Fifth Circuit nonetheless found that no material fact issue was created by these declarations. *Id.*

Here, Genesis Ventures has done even less than the defendant in *Carnegie Technologies*: Genesis Ventures did not submit any evidence in support of its defenses (nor did it use CB50's evidence); it did not argue that a material fact issue existed; and it did not otherwise substantiate its defenses in any other way. Without more, Genesis Ventures' affirmative defenses do not

require the district court to defer ruling on the summary judgment motion or prevent the district court from assessing the merits of that motion.

***c. Personal knowledge requirement.***

Genesis Ventures next argues that the declaration of Laurence Valls (Doc. No. 36-1) is not competent summary judgment evidence because he has not "expressly confirm[ed] nor provide[d] a justifiable basis for this Honorable Court to conclude that said verification is based . . . on his personal knowledge." (Doc. No. 41, p. 4.) Instead, Genesis Ventures says, Mr. Valls' declaration "is based solely on his purported position at CB50 and the assertion that said position qualifies him as a custodian of records therefor." *Id.*

Under Federal Rule of Civil Procedure 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge." But "declaration[s] need not affirmatively state that [they are] based on personal knowledge." *Johns L. Firm, LLC v. Pawlik*, No. 24-20147, 2024 WL 4835239, at *3 (5th Cir. Nov. 20, 2024) (unpublished) (citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005)). Rather, personal knowledge can be inferred from statements which allow the district court "to conclude that the affiant's assertions are indeed based on such knowledge." *Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 881 (5th Cir. 2014). Further, personal knowledge can be "demonstrated by showing that the facts stated reasonably fall within the sphere of responsibility of the affiant as a corporate employee." *PNC Bank, Nat'l Ass'n v. Ruiz*, No. 22-50584, 2023 WL 3340078, at *3 (5th Cir. May 10, 2023) (*per curiam*) (unpublished) (cleaned up).

Mr. Valls' declaration allows for the reasonable inference that he has personal knowledge about the statements in his declaration. He is CB50's Director and Managing Member (Doc. No. 36-1, p. 2), he signed the loan agreement on CB50's behalf (Doc. No. 36-2, p. 3), and he is the

custodian of the loan documents, (Doc. No. 36-1, pp. 2-3). Though Genesis Ventures argues otherwise without offering any facts to the contrary, Mr. Valls' declaration is supported by personal knowledge because custody of these records falls within the sphere of his responsibility.

Further, Mr. Valls is not a narrative witness here, as CB50 explains in its reply (Doc. No. 43, p. 2); rather, his declaration provides the foundation for the business records exception and self-authentication under Federal Rules of Evidence 803(6) and 902(11). Genesis Ventures' argument hinges on Mr. Valls' declaration as evidencing its default, but the evidence of default is the payment records, not Mr. Valls' testimony. Mr. Valls only needed personal knowledge that he is CB50's records custodian and that the records were kept in CB50's regular course of business. And under Rules 803(6) and 902(11), those records constitute competent summary judgment evidence, so Genesis Ventures' argument that Mr. Valls lacked personal knowledge about Genesis Ventures' "alleged failures to make timely payments" is misplaced and not dispositive here.

***2. Validity of the Preferred Mortgage.***

Turning to the Preferred Mortgage, it must first be determined whether CB50 holds a valid preferred ship mortgage. It does.[2] CB50 argues that it holds a *preferred* ship mortgage because it satisfies each element of the governing statute, 46 U.S.C. § 31322(a). (Doc. No. 36, pp. 7-10.) Genesis Ventures, unhelpfully, does not address these arguments or discuss first preferred mortgages in its response. *See* Doc. No. 41.

CB50 holds a valid preferred ship mortgage. Under 46 U.S.C. § 31322(a), a qualifying preferred mortgage must: (1) cover "the whole of the vessel;" (2) have been filed in "substantial compliance" with 46 U.S.C. § 31321; and (3) cover a "documented" vessel. The Preferred

[2] Whether the Preferred Mortgage is also "first" will be discussed after default has been established.

Mortgage does all of those things. First, the Preferred Mortgage states that it covers the "whole of the vessel." (Doc. No. 36-4, p. 2.) Second, the Preferred Mortgage was filed with the NVDC on September 10, 2024, as required under 46 U.S.C. § 31321(a)(1). *See* Doc. No. 36-5, p. 15. Additionally, and as required by § 31321(b)(1)-(6), the Preferred Mortgage identifies the vessel, the names and addresses of the parties, the total amount secured under the Preferred Mortgage, Genesis Ventures' interest as owner of the *Gemini*, and was signed by Genesis Ventures' member and acknowledged before a notary. (Doc. No. 36-4, pp. 2, 6.) Third, the Preferred Mortgage covers a "documented" vessel, as shown by the *Gemini*'s official number of 575038, transcribed on the Coast Guard's abstract of title. (Doc. No. 36-5, p. 2.)

None of these elements is contested by Genesis Ventures; indeed, Genesis Ventures even somewhat agrees in its Answer to CB50's cross-claim that the Preferred Mortgage was a preferred ship mortgage: "Defendants admit [Doc. No. 32-3] to the Amended Cross-Claim contains a Preferred Ship Mortgage but denies each and every other allegation of Amended Cross-Claim Paragraph 8."[3] (Doc. No. 33, p. 2 ¶8, answering allegations in Doc. No. 32, p. 2 ¶8.) Because the Preferred Mortgage satisfies all of the requirements under law, and because Genesis Ventures has not shown a fact issue to the contrary, CB50 accordingly holds a valid preferred mortgage on the *Gemini*.

***3. Default.***

Having established the validity of the Preferred Mortgage, the next step is determining whether Genesis Ventures defaulted under its terms. CB50 argues that Genesis Ventures

[3] Paragraph 8 alleges that "[t]o secure the payment of all sums due under the Note and Loan Agreement, Owner, as mortgagor, duly executed and delivered to CB50, as mortgagee, a first preferred ship mortgage dated September 6, 2024 . . . on the Vessel, her engines, boilers, tackle, apparel, etc., securing the sum of $325,000.00, all as more fully described therein. A copy of the [Preferred Mortgage] is attached hereto as [Doc. No. 36-4] and incorporated herein by this reference." (Doc. No. 32, p. 3.)

defaulted by failing to make its monthly installment payments, starting in December 2025, and by allowing the *Gemini*'s arrest. (Doc. No. 36, pp. 3-5, 10-11.) Genesis Ventures does not deny that it failed to make its payments; rather, it hinges its response on the personal knowledge argument, which would undermine CB50's use of the loan payment spreadsheet. (Doc. No. 41, p. 4; Doc. No. 36-6, p. 2.) But that argument has already been found unpersuasive here, so CB50's claim remains otherwise unchallenged.

A mortgagee, in this case CB50, may enforce a preferred mortgage lien "[o]n default of any term of the preferred mortgage." 46 U.S.C. § 31325(b). Whether an event of default occurred turns on the terms of the mortgage itself. *See E.N. Bisso & Son, Inc. v. M/V Bouchard Girls*, 482 F. Supp. 3d 537, 542 (E.D. La. 2020). And where the mortgagee "put[s] forth evidence that [d]efendants did not pay the amount due," and the defendants "do not contest th[at] fact," or show otherwise, then the defendants are in default and the plaintiffs are "entitled to judgment as a matter of law." *Id.*

Under the Preferred Mortgage here, an event of default includes any "[d]efault in the payment of any indebtedness, or any part or installment thereof, secured hereby as same matures." (Doc. No. 36-4, p. 4.) The secured indebtedness includes the promissory note, which required monthly installments of $6,905.29. (Doc. No. 36-3, p. 2; Doc. No. 36-4, p. 2.) CB50's records show that Genesis Ventures made its last payment on October 2, 2025, and has not paid any installment due since December 6, 2025. (Doc. No. 36-6, p. 2.) CB50 notified Genesis Ventures of the default on March 23, 2026; it notified Genesis Ventures that it had to cure the default by March 31, 2026, but Genesis Ventures did not do so and does not argue that it did so. (Doc. No. 36-7, p. 2; Doc. No. 36, p. 4.) Genesis Ventures offers no evidence to the contrary. *See* Doc. No. 41. There is thus no genuine dispute that Genesis Ventures is in default.

Courts have found default in similar instances of nonpayment between parties on a preferred ship mortgage. *See E.N. Bisso*, 482 F. Supp. 3d at 542 (failure to timely pay principal amount resulted in default and summary judgment); *Bank of Am., N.A. v. M/V Marine Princess*, 600 F. Supp. 3d 663, 672 (E.D. La. 2022) ("The record also reflects that Sunset Shipping breached the loan agreement and the mortgage by failing to make repayments as required by . . . the loan agreement."); *Synovus Bank v. The Accu X*, Case No. 2:11-0341, 2011 WL 2134382, at *4-*5 (W.D. La. May 25, 2011) (granting summary judgment *in rem* on a preferred mortgage because the owner "has not disputed that it is in default" and "presented no summary judgment evidence to dispute" the opposing claims).

Thus, Genesis Ventures defaulted on its repayments and defaulted on the terms of the Preferred Mortgage. CB50 also argues that the *Gemini*'s arrest is an independent default under the Note. (Doc. No. 36, pp. 4-5.) Because Genesis Ventures' payment default is dispositive, the district court need not reach that contention.

***4. Priority.***

Having established that CB50 holds a valid preferred mortgage which Genesis Ventures defaulted on, the next step is determining the priority of CB50's lien. CB50 argues that its lien is first because it outranks all other liens asserted against the *Gemini*, including 3 C's' lien for necessaries. (Doc. No. 36, pp. 11-13.) CB50 does note, however, that its lien would be subordinate to any *custodia legis* expenses incurred by 3 C's during the *Gemini*'s arrest. *Id.* at 12-13. Genesis Ventures does not contest CB50's priority. *See* Doc. No. 41.

When a vessel is sold by order of a district court in an action to enforce a preferred mortgage lien, every claim against the vessel is terminated and attaches to the sale proceeds "in accordance with their priorities." 46 U.S.C. §§ 31326(a)-(b). A preferred mortgage lien "has

priority over all claims against the vessel (except for expenses and fees allowed by the court, costs imposed by the court, and preferred maritime liens)." *Id.* § 31326(b)(1). In *Corporativo Grupo*, the Fifth Circuit established the ranking of liens as follows:

1. *Custodia legis* expenses;
2. Seamen's liens for wages;
3. Salvage and general average liens;
4. Tort liens;
5. Preferred ship mortgage liens;
6. Liens for necessaries under [the Commercial Instruments and Maritime Lien Act];
7. State-created liens that are maritime in nature;
8. Maritime liens for penalty/forfeiture for violation of federal statutes;
9. Perfected non-maritime liens;
10. Attachment liens; [and]
11. Maritime liens in bankruptcy.

64 F.4th at 609. The Fifth Circuit further explained that "[o]nce competing liens have been ranked according to class, the top priority liens will of course be paid first." *Id.*

Two claims have been asserted against the *Gemini*: CB50's preferred ship mortgage lien and 3 C's' lien for unpaid repairs. (Doc. No. 36, p. 12.) According to *Corporativo Grupo*, CB50's lien ranks fifth while 3 C's' lien—if it is valid—ranks sixth, because repairs are "necessaries" under 46 U.S.C. § 31301(4). *See Martin Energy Servs., L.L.C. v. Bourbon Petrel M/V*, 962 F.3d 827, 831 (5th Cir. 2020) (explaining that "necessaries" include "repairs"). A lien for necessaries can outrank the preferred ship mortgage if it qualifies as a "preferred maritime lien," however. Such a scenario occurs if the repairs arose "before a preferred mortgage was filed." 46 U.S.C. § 31301(5)(A). CB50's Preferred Mortgage was filed on September 10, 2024, while 3 C's alleges that it performed its work between October 28, 2024, and December 9, 2024. The result, then, is that CB50's Preferred Mortgage still outranks 3 C's, rendering it superior. *See Bank One, Louisiana N.A. v. Mr. Dean MV*, 293 F.3d 830, 837 (5th Cir. 2002) (cleaned up) (noting, in *dicta*, that repairs which "beg[a]n before, but not completed until after recording" of a

mortgage may be "entitled to priority," and suggesting that "the relevant date for continuing contracts should be the date of commencement of performance").

Accordingly, CB50's preferred mortgage lien is superior to all other asserted claims against the *Gemini*, subject only to *custodia legis* expenses and any other expenses, fees, and costs allowed by the Court. *See* 46 U.S.C. § 31326(b)(1); *Corporativo Grupo*, 64 F.4th at 609. The district court does not currently need to decide whether 3 C's holds a valid lien (which Genesis Ventures disputes) or whether 3 C's is entitled to recover *custodia legis* expenses. Those questions may be resolved when the *Gemini*'s sale proceeds are distributed.

***5. Remedy and amount owed.***

The next step is to determine the appropriate remedy for CB50 for holding a first preferred ship mortgage which was defaulted. CB50 seeks judgment for the full unpaid amount owed under the loan documents, which it identifies as $262,951.36 in principal, "plus accrued interest, and court costs and attorney's fees." (Doc. No. 36, pp. 14-15.) Genesis Ventures does not dispute this amount in its response, but instead in its answer merely generally denies that CB50 is entitled to "all claims for relief prayed therein." (Doc. No. 33, p. 5.)

CB50's payment records reflect a principal balance of $262,951.36 following Genesis Ventures' last payment on October 2, 2025. (Doc. No. 36-6, p. 2.) Because nothing in the record suggests otherwise,[4] the district court should treat that amount as established. The remaining totals remain unclear, however, because CB50 has not provided any concrete number concerning interest and attorney fees.

[4] Though some components of CB50's spreadsheet remain unexplained, Genesis Ventures did not contest the actual spreadsheet or amounts listed there. *See* Doc. No. 41.

The promissory note provides for interest at ten percent before maturity, 17.5 percent after, and a five percent late charge on overdue installments that "shall not apply to any payment due at maturity." (Doc. No. 36-3, p. 2.) But that calculation cannot currently be completed because the parties have not provided the exact date that CB50 exercised its option to accelerate the promissory note, a date that governs which interest rate applies.[5] *See* Doc. No. 36-7 (notice of default setting forth late charges). Without that date, the total amount of interest owed cannot be precisely calculated or awarded. CB50 has likewise not provided information about its requested attorney fees and costs. *See* Doc. No. 36.

Accordingly, the district court should order CB50 to submit an accounting document within 21 days of adopting this Memorandum and Recommendation, providing an estimate as to costs of interest and attorney fees. The district court should also allow Genesis Ventures to respond to CB50's estimates, without relitigating this motion.

***6. Judicial sale.***

Having determined that CB50 holds a valid preferred mortgage lien on the *Gemini*, that Genesis Ventures has defaulted, and that CB50's lien is superior to the other asserted claims, the next step is to assess CB50's request that the vessel be sold. CB50 argues that a judicial sale is the proper remedy for enforcing its lien. (Doc. No. 36, pp. 13-14; Doc. No. 43, pp. 3-4.) Genesis Ventures responds that a sale should be postponed until its counterclaims against 3 C's are resolved, because a sale would disturb the *status quo* and permanently deprive it of the vessel. (Doc. No. 41, pp. 2, 5-6.) It also argues that CB50 is adequately secured by the vessel's

---

[5] CB50 noted in its motion that the promissory note was "accelerated and declared as due and owing effective at the close of business on March 31, 2026." (Doc. No. 36, p. 5.) But CB50 has not provided evidence that it actually accelerated the promissory note, and the amortization schedule does not delineate which installments incurred increased interest rates. *See* Doc. No. 36-6, p. 2.

continued arrest. *Id.* at 5. But judicial sale of the *Gemini* will not preclude Genesis Ventures' potential recovery because it seeks only money damages in its counterclaim, *see* Doc. No. 26, p. 10; Doc. No. 41, pp. 2, 5, and succeeding on its counterclaims would not restore the *Gemini* to Genesis Ventures' possession. Thus Genesis Ventures' argument to the effect that judicial sale is premature is untenable. Further, the *Gemini*'s claimed $400,000 value does not mean that CB50 is adequately secured by the vessel's continued arrest because custodial expenses and accruing interest steadily erode whatever equity the vessel holds. Genesis Ventures could have obtained the *Gemini*'s release at any time by posting security, but has not done so in the more than nine months since her arrest.

On default, a mortgagee may "enforce the preferred mortgage lien in a civil action *in rem*." 46 U.S.C. § 31325(b)(1). Enforcement ordinarily culminates in a judicial sale because liens are "special property right[s] in [a] vessel," which "grant[] the creditor the right to appropriate the vessel, have it sold, and be repaid the debt from the proceeds." *Martin Energy Servs.*, 962 F.3d at 830. When a vessel is sold by court order in such an action, "any claim in the vessel existing on the date of sale is terminated," and the vessel "is sold free of all those claims." 46 U.S.C. § 31326(a). The terminated claims then attach to the proceeds "in accordance with their priorities." 46 U.S.C. § 31326(b).

Here, judicial sale of the *Gemini* is appropriate because CB50 has established both prerequisites to enforcing its lien *in rem*: it holds a valid preferred mortgage on the *Gemini*, and Genesis Ventures has defaulted under the Preferred Mortgage's terms. *See* 46 U.S.C. §§ 31322(a), 31325(b)(1). And because CB50's lien is superior to all other claims asserted against the *Gemini*—subject only to *custodia legis* expenses and other expenses, fees, and costs allowed by the Court—CB50 will be paid first from the sale proceeds. *See* 46 U.S.C. § 31326(b)(1).

Courts within the Fifth Circuit have routinely ordered the sale of a vessel once the mortgagee establishes its lien and the owner's default. *E.g., Synergy Bank v. M/V Capt. T.W. Boudreaux*, No. 20-1066, 2020 WL 4732217, at *2 (E.D. La. Aug. 14, 2020) (declaring preferred mortgage a valid lien and ordering vessel sold "free and clear of all liens and preexisting claims" under § 31326(a)); *Synovus Bank*, 2011 WL 2134382, at *5-*6 (granting mortgagee summary judgment *in rem* where owner had "ample time to post bond on the vessel and ha[d] not done so"). Courts have also ordered sales even before the mortgagee's lien was fully assessed on the merits, but where the owner failed to secure the vessel's release. *See Silver Star Enters., Inc. v. M/V Saramacca*, 19 F.3d 1008, 1014 (5th Cir. 1994) (affirming interlocutory sale under Supplemental Admiralty Rule E(9) where owner failed to secure release for seven months, even though the full amount owed remained as an issue for trial); *Marine Princess*, 600 F. Supp. 3d at 674-77 (interlocutory vessel sale ordered after owner failed to post security; the proceeds were ordered to be held in registry while competing claims remained pending). The case for a sale is stronger still here because CB50 has established both its lien and Genesis Ventures' default.

Like the cases described, CB50 possesses a first preferred ship mortgage, and Genesis Ventures defaulted on it. The district court should grant summary judgment against the *Gemini in rem* and order its judicial sale. Because there are other issues still to be litigated in this case, the district court should place the funds into a registry which can then be drawn from to pay any additional costs that are awarded later in the litigation. *Cf. Eurasia Int'l, Ltd. v. Holman Shipping, Inc.*, 411 F.3d 578, 580-81 (5th Cir. 2005) (describing deposit of sale proceeds into registry and distribution of funds after case was resolved).

***F. Conclusion and recommendations.***

CB50 holds a valid preferred mortgage lien on the *Gemini*, Genesis Ventures defaulted on the Preferred Mortgage, and CB50's lien is superior to the other asserted claims, so the *Gemini* should be sold—with the funds being placed into the registry—so that CB50 can collect its overdue payments. Thus, the district court should GRANT CB50's motion for summary judgment (Doc. No. 36). The district court should also ORDER CB50 to submit an additional accounting document within 21 days of the entry of its order, computing and clarifying the amounts owed in interest and attorney fees. Genesis Ventures should be granted a period of time, perhaps 21 days, to respond to CB50's accounting document (without relitigating this summary judgment motion).

***G. Notice.***

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within 14 days after being served with a copy of this Memorandum and Recommendation, any party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions that are accepted by the district court. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

SIGNED on October 19, 2026.

MITCHEL NEUROCK
United States Magistrate Judge